## MARIS *et al.* v. LINDSEY *et al.*

[87 South. 13, No. 21456.]

1. COURTS. *One of two reasonable constructions of statute will be adhered to.*

   Where there are two reasonable interpretations deducible from the language of a statute, and the court has already adopted one of them, the decision should stand. There ought to be stability in court decisions.

2. STATUTES. *Given effect according to terms and intendment ascertained according to recognized rules.*

   In construing statutes, the court desires to reach a conclusion in harmony with the intent and purpose of the Legislature, and if the Legislature acts within constitutional limits, the court

will give effect to its statutes, according to the terms and intendment of the Legislature, ascertained according to recognized rules of statutory construction.

3. MORTGAGES. *Sale on day following last day of three-week publication authorized; notice may be published a fourth time and sale made within one week thereafter.*

A sale under section 2772, Code of 1906 (Hemingway's Code, section 2276), may be made on the day following the last day of a three-week publication, but, if for sufficient reasons, a sale on that particular day be not desirable, the notice may be published the fourth time, and a sale made not later than one week from the day of the fourth publication, provided the original notice fixes the day of the sale. *Lake* v. *Castleman,* 116 Miss. 175, 76 So. 877, cited.

4. TAXATION. *Tax deed invalid when parties applying to redeem pay amount required, and deed is surrendered, though mistake in amount is made; tax unpaid on redemption may be recovered and made lien on land redeemed.*

Where land is sold for the nonpayment of taxes, the tax collector's deed must, under section 4338, Code of 1906 (Hemingway's Code, section 6972), be filed in the office of the chancery clerk and remain there for two years for redemption, unless sooner redeemed; and, where parties entitled to redeem apply to the chancery clerk and pay the amount required of them for that purpose, and the tax deed is marked canceled and surrendered to them, the deed becomes invalid, even though the clerk makes a mistake in the amount they should pay; but in such case the taxes accruing on the land between the time of sale and the time of redemption may be recovered by the person paying them, and may be made a lien upon the land redeemed.

HOLDEN and SYKES, JJ., dissenting.

APPEAL from chancery court of Madison county.

HON. V. J. STRICKER, Chancellor.

Suit by Sarah Jones Lindsey and others against C. T. Maris and others. From a decree making an injunction perpetual, defendants appeal. Affirmed and remanded.

The appellees filed a bill in the chancery court against the appellants, alleging that the complainants, who are

the appellees here, are the descendants of one Easter Jones,
who died intestate on or about the 8th day of September,
1911, leaving named parties as her heirs, and setting forth
the subsequent death of a portion of the heirs and the
names of their descendants who inherited in their place
their share of the estate of the said Easter Jones. It is
also alleged that the said Easter Jones was seized and pos-
sessed in fee simple of a portion of the lands embraced in
this suit, describing said lands, and also that she died
seized and possessed of an undivided one-half interest in
other lands described in the bill, and that Jacob Jones, her
husband, owned the other one-half interest in the last-
mentioned lands; that Jacob Jones died intestate on the
24th day of September, 1919, and left as his heirs certain
of the complainants. It is further alleged that on the
14th day of April, 1917, the said Jacob Jones and William
Dinkins, Sr., conveyed all of their interest in all of the
above-mentioned lands to C. T. Maris, as evidenced by
deed of record referred to in the bill; that on the same
day C. T. Maris reconveyed to said Jacob Jones and Wil-
liam Dinkins, Sr., a part of the said lands, describing the
same in the bill, and alleged that the said C. T. Maris and
William Dinkins, Sr., are in the full possession and con-
trol of the said lands, and have had the exclusive posses-
sion since their respective transfers and the death of the
said Easter Jones, and that they have held the same for
their own use and benefit to the exclusion of the com-
plainants, having collected valuable rents, sold much valu-
able timber therefrom, used and occupied portions of the
said land for their own benefit; the sum and total of said
amounts being unknown to the complainants.

It is further alleged in the bill that there appears on the
records of deeds in the office of the chancery clerk an in-
strument of writing, purporting to be a deed of trust on
all of said lands executed by the said Jacob Jones and
Easter Jones to secure Fred Rings in the sum of five thou-
sand dollars, divided into eleven deferred payments of five
hundred dollars, each evidenced by a note due and payable

on the 8th day of March of the years 1912, 1913, 1914, 1915, 1916, 1917, 1918, 1919, 1920, 1921, and 1922, respectively.

It is further alleged in the bill that Jacob Jones and Easter Jones were never indebted to the said Rings, and if the said deed of trust was to secure to any person any sum, the indebtedness had long since been paid, and the notes surrendered and the lien thereby released.   But should the court find anything to be lawfully due, complainants offer to do equity in the premises.

The bill sets forth the respective interest claimed by the complainants, and alleges that William Dinkins, Sr., and C. T. Maris each had a one-seventh interest in said lands. as to a portion of the lands, and a one-fourteenth interest each as to the lands owned jointly by Jacob Jones and Easter Jones.

The bill prays that a commissioner be appointed by the court to ascertain the amount of rents received and the use and occupation of the lands, and to ascertain the value of all timbers cut, sold, or used by them since the death of the said Easter Jones, and to ascertain the amount of all taxes paid by them, together with the value of all permanent improvements made by them, if any, and for a partition of the lands, if capable of a partition in kind, and, if not, then for a sale of said lands for division of the proceeds among the parties to the suit.

The answer of the defendant Maris admitted the heirship of some of the complainants as alleged and denied, upon information and belief, as to the others; admits that the parties who are dead died intestate as alleged in the bill; admits that Easter Jones died owning a portion of the lands; and denied her ownership of other lands at the time of her death.   The defendant, Maris, admits the allegations with reference to the conveyance by Jacob Jones and William Dinkins, Sr., but charges that they owned all the land sought to be partited, but that such ownership was subject to a deed of trust given to secure certain indebtedness to Fred Rings, but denies the amount set out in the bill, and sets forth the amounts of the notes accord-

ing to his contention, and alleges that said notes were transferred to John Wohner, and that said debt was due and unpaid, and that on the 9th day of June, 1913, said lands were sold by the trustee to Jake Jones and William Dinkins, and that said Jones and Dinkins acquired a perfect legal title, and that complainants have no claim to the said lands for this reason. The answer denies the allegations with reference to the collection of rents and the selling of timber, etc., and denies the right to have an accounting of said things.

The answer further alleges that on June 9, 1913, Jake Jones, William Dinkins, Robert Jones, Maggie Jones, and Sarah Jones Lindsey owed John Wohner the sum of five thousand eight hundred sixty-five dollars, bearing interest at the rate of six per cent. per annum, and that they executed six promissory notes due and payable in from one to six years for the sums of one thousand three hundred twenty-nine dollars and forty cents, one thousand two hundred seventy dollars and seventy-five cents, one thousand two hundred twelve dollars and ten cents, one thousand one hundred fifty-three dollars and forty-five cents, one thousand ninety-four dollars and eighty cents. and one thousand thirty-six dollars and fifteen cents, and secured said notes by deed of trust upon all of said lands to W. H. Powell, trustee, which was duly acknowledged and placed of record, and a certified copy filed as an exhibit to the answer and cross-bill; that this debt, secured by said deed of trust, was transferred to the said Maris on April 14, 1917, and noted on the record; that said parties failed to pay said notes, and that the trustee in accordance with law and the terms of the deed of trust sold all of said lands to the said Maris on April 16, 1917, by deed duly acknowledged and recorded, a copy of which is filed as an exhibit to the answer and cross-bill; that the defendant Maris thereby acquired a perfect title to said lands. The answer and cross-bill further alleges that the first publication of the notice of said trustee's sale was made on March 23, 1917, the second notice on March 30,

1917, and the third notice on April 6, 1917, and that the sale was made on April 16, 1917.

In the answer and cross-bill it is further alleged that on April 2, 1917, all of the lands described in the bill were sold for the taxes of the year 1916 due the state and county, said sale being made by the sheriff and tax collector to John Wohner, and that a tax deed was executed and filed with the chancery clerk, and remained on file until March 31, 1919, on which date it was unlawfully delivered by the clerk to Jake Jones or William Dinkins, or to some one of the complainants; that the said chancery clerk thought he had a right to deliver said deed because said person paid him, as he thought, the necessary amount to redeem the lands, but as a matter of fact the taxes for 1917 and 1918 were not paid to the said chancery clerk by them, as required by section 4338 of the Code of 1906, and that the said attempted redemption of said lands was null and void.

The answer and cross-bill further alleges that the defendant Maris paid the taxes for the years 1917, 1918, and 1919, the same amounting to a total of six hundred dollars and thirty cents, which is alleged to be a first lien upon said lands should the complainants be granted any relief. It is further alleged that since the 16th day of April, 1917, the said Maris has placed upon said lands permanent improvements, before notice of the intention of the complainants to claim said lands, in the sum of five hundred dollars. It is further alleged that the trustee, W. H. Powell, as a further precaution, fortification, and establishment of the title to said lands advertised the same for resale under the deed of trust aforesaid on April 19, 1920, but before the sale was made an injunction was obtained on a supplemental bill, and he was restrained from selling the same. The answer is made a cross-bill.

The complainants filed a supplemental bill setting forth the fact that Powell, trustee, had readvertised the lands for sale, and that if the deed of trust was ever owing to Wohner, it had been paid and discharged by the sales of

timber and rents, profits, etc., and an injunction was prayed and obtained, restraining the sale.

The complainants answered the cross-bill of the defendant Maris, and denied the material allegations in the cross-bill and the validity of the sales made.

The exhibits to the answer and cross-bill of Maris are extensive, and set forth the deeds of trust and notices appearing in the papers under each of them, with copies of the deeds of trust and trustee's deeds executed in both instances. In the deed of trust executed by Jacob and Easter Jones, A. K. Foote, trustee, to secure Fred Rings, the record shows that the advertisement of said sale appeared in a newspaper of the county as follows: First, on May 16, 1913; second, on May 23, 1913; third, on May 30, 1913; and the sale was made on the 9th day of June, 1913.

The recital in the trustee's deed with reference to the advertisement above mentioned is as follows:

"And whereas I did post one of said notices on the 15th day of May, A. D. 1913, before the south door of said courthouse, which is a convenient public place in said county, and did publish in the Madison County Herald, a newspaper published in said county, said notice on the 16th and 23d and 30th of May, 1913, and whereas on this the 9th day of June, A. D. 1913, before said courthouse door at the hour of 12 m. (noon) o'clock, I did offer the property hereinafter described for sale at public outcry," etc.

The sale by Powell, trustee, on the 16th day of April, 1917, was made on notice as testified by Powell as follows:

"I wrote out on March 21, 1917, and posted the notice on the 21st day of March, 1917, at the south door of the courthouse in Canton, Miss., the notice as shown in Exhibit 6 to answer and cross-bill. I had also published in the Madison County Herald, a weekly newspaper published in Canton, Miss., said notice which was published on March 23, 1917, and March 30, 1917, and on April 6, 1917, and I made the sale on April 16, 1917, so there were

ten days elapsing between the last publication and the day of the sale. And there was a publication of said paper on the 13th day of April, 1917, in which this publication did not appear."

A motion was made to dissolve the injunction sued out by the complainants, and on this motion some testimony was taken by the appellant, showing the appellant's version of the amount of rent received, the amount of timber sold, the amount of taxes, and the amount of improvements claimed to' have been placed on the lands in question by the said Maris, which amounts would .amount to less than the indebtedness claimed, and it was admitted in this testimony that if the sale by Powell, trustee, and the sale by Foote, trustee, were invalid, then an accounting would be necessary. The complainants tendered testimony on these questions but the court held that on this motion their evidence was premature, and rendered a decree making the injunction perpetual, and granted this appeal to settle the principles of the case.

*W. H. & Robert H. Powell,* for appellant.

The deed in trust provided that the trustee could sell, "Before the south door of the courthouse, in Canton, Mississippi, at public auction to the highest bidder, for cash, after having given three weeks' notice of the time and place of sale, by posting a written or printed notice thereof before said courthouse door, and by publication, as is required by law in such cases."

The provision of law as to sales of land under deeds of trust is embodied in section 2772, Code 1906, Hemingway's Code, section 2276, that sales of land shall be advertised for three consecutive weeks preceding said sale, etc. The word "next" does not appear in this statute. The trustee advertised said lands for sale by publication on March 23d and 30th, and April 6, 1917, and by posting before the south door of the courthouse, from March 21, to April 16, 1917, and the sale by the trustee was made on the 16th day

of April, 1917, C. T. Maris became the purchaser and entered into possession of said lands.

Code 1906, section 333, Hemingway's Code, section 3706, provides in regard to notice of the proposal to issue county bonds, that publication shall be made for three weeks next preceding, Code 1906, section 3419, Hemingway's Code, section 5978, provides that the publication of notice for issuance of city bonds, shall be made for three weeks, next preceding. Laws 1910, chapter 149, section 2, provides for publication for three weeks, next preceding the meeting at which bonds are to be issued. Code 1906, section 1603, Hemingway's Code, section 1370, provides that all words and phrases contained in the statute are used according to their common and ordinary acceptation and meaning, but technical words and phrases according to their technical meaning.

By Code 1906, section 1607, Hemingway's Code, section 1374, it is provided: Rules:—When a number of weeks is prescribed when publication shall be required to be made in some newspaper for three weeks, it shall be sufficient to publish once a week for three weeks, even though there be not three weeks between the first and last publication, but there must be three weeks between the first publication and the day for the appearance of the party or other thing for which the publication shall be made; and this rule shall furnish a guide for any similar case, whether the time required be more or less than three weeks."

By Code 1906, section 3985, Hemingway's Code, section 2992, it is provided that sales of personal property shall be advertised ten days before the day of sale. By Code 1906, section 3103, Hemingway's Code, section 2467, it is provided that all actions on judgments shall be brought within seven years next after rendition, and so on *ad infinitum,* which shows conclusively that the legislature used the words "preceding" and "next preceding," advisely in the various statutes.

The case of *Planter's Mercantile Co.* v. *Braxton et al.,* reported in 120 Miss. 470, and 82 So. 323, decided by Divi-

sion B on July 14, 1919, is relied on to sustain this suit, while Maris contends that said decision is erroneous, in that the court inserted the word "next" before the word "preceding" without legislative sanction, and in face of previous declarations by the legislature cited *supra,* wherein the word "next" was expressly employed and expressly omitted from the section providing for sales of lands under deeds in trust.

We will first resort to the dictionary in order to ascertain the meaning of "next," before precede, preceding, next preceding. Meaning of Words.—Century Dictionary and Encyclopedia defines as follows: First, in front, at a point in advance, ahead; second, in time preceding, previously, formerly already; third, in precedence of, in advance of; fifth, anterior to in time, previous to. N. B. This word "before" is used by the legislature for publications in sale of personalty.

Will it be contended that the legislature meant next before? As the definition is preceding, in precedence, of previous to, would not the court be equally justified in inserting the word "next," before the word "before" as it was in inserting the word "next" before "preceding."

"Before," as defined by the Standard Dictornary, means first, so as to precede, in front, ahead; second, prior in time, earlier, before hand, previously, in advance of; third, in preference to; fourth, sooner than. There is no intimation in any of these twenty-one definitions of "next before" or "next preceding." "Next before," and "before," have entirely different meaning.

We respectfully submit that the authorities relied on to sustain the decision in the Braxton case are not pertinent, and cannot be even persuasive in view of the differences in the statute of Mississippi and the statutes of other states cited.

By statutes in many states, it is provided that the word "preceding," when used by way of reference to any section of a statute, or title of the code, shall mean the section next preceding that in which reference is made unless

some other section is expressly designated, or unless the context requires a different construction. The statutes referred to will be cited in this brief. Texas, Revised St. 1895, Article 2370; Pen. Code, Art. 29; New Hampshire, Pub. St., p. 63, ch. 2, par. 13; Indiana, Horner's Rev. St. 1901, par. 240, subsec. 6; Georgia, Pen. Code 1895, par. 2; Kentucky, Statute 1903, par. 462; Maine, Rev. St. 1883, par. 59, ch. 1, par. 6, subsec. 15; Wyoming, Rev. St. 1899, par. 2724; North Carolina, Code 1883, par. 3765, subsec. 7; Wisconsin, Rev. St. 1898, par. 4971; West Virginia, Code 1899, page 138, ch. 135, par. 17; Rhode Island, Pub. St. 1882, page 78, ch. 24, par. 20; Massachusetts, Rev. Law, 1902, p. 89, ch. 9, par. 5, subsec. 18; Minnesota, Gen. St. 1894, par. 255, subsec. 12; Missouri, Rev. St. 1899, par. 4155; Vermont, St. 1894, p. 15; Virginia, Code 1887, par. 5; Connecticut, Gen. St. 1902, par. 1; Alabama, Civil Code 1896, par. 5; Michigan, Complied Laws 1897, par. 50, subsec. 13; New York, Laws 1892, ch. 677, par. 10.

In *Simpson* v. *Roberts,* 35 Georgia, 180, it is held that: "Although the word preceding, means generally next before, yet a different significance will be given to it if required by the context and the facts of the case."

This decision was bottomed on the statute of Georgia, cited *supra,* which is radically different from our code. The case of *Smith* v. *Gibson,* 191 Ala. 305, 68 So. 143, was bottomed on the statute of Alabama, cited, *supra.*

Our statutes oppose the construction placed upon the word "preceding," in the Braxton case, as is conclusively shown by reference to our statutes as follows: Statutes of Mississippi. Relating to publications wherein the word "next" is expressly used. Code 1906, section 333, Hemingway's Code, section 3706; Code 1906, section 3419, Hemingway's Code, section 5978; Code 1906, section 3103, Hemingway's Code, section 2467; Laws 1910, chapter 149, section 2. Wherein the words "next after" or "next before" are employed by the legislature. Code 1906, section 3090, Hemingway's Code, section 2454; Code 1906, sec-

tion 3092, Hemingway's Code, section 2456; Code 1906, section 3097, Hemingway's Code, section 2461; Code 1906, section 3098, Hemingway's Code, section 2462; Code 1906, section 3099, Hemingway's Code, section 2463; Code 1906, section 3101, Hemingway's Code, section 2465; Code 1906, section 3102, Hemingway's Code, section 2466; Code 1906, section 3103, Hemingway's Code, section 2467; Code 1906, section 3104, Hemingway's Code, section 2468; Code 1906, section 3112, Hemingway's Code, section 2476. Now turn to Statutes of Mississippi wherein the word "next" is not used by the legislature and wherein it is expressly omitted.

Code 1906, section 2772, Hemingway's Code, section 2276, and this section is the one providing for publication for three consecutive weeks preceding sale of land, not next preceding. Code 1906, section 3985, Hemingway's Code, section 2992, which provides for sale of personal property ten days before day of sale, not next before.

The word "next" is expressly omitted in these two latter sections by the legislature and the maxim of *"Expressio unius, est exclusio alterius"* applies.

This court refers in the Braxton case, to Webster's Dictionary and Crabb's Synonyms. Let us analyze them, and see if they should overturn our statutes. Webster's New International Dictionary, "Precede," is defined: 1. To go or come before, to have precedence.

There is nothing in any of these definitions to indicate next precede or next preceding. Precede is also there defined: 1. To go before in quality or degree, to exceed, surpass. (This is the primary definition.) 2. To go before in rank, dignity, importance or the like. 3. To be, go, or come before in arrangement, to be, go, or move before, in front of. 4. To go before in order of time, to occur first with relation of anything. 5. To cause to be preceded, to preface.

There is nothing in any of these nineteen definitions of the above five paragraphs to indicate next precede. The fourth paragraph in the words to go before in order of

124 Miss.—48.

time, does not mean immediate or next. Preceding, is defined by said Dictionary as: 1. That preceeds, going before, as in order of rank, time or place, foregoing.

There is absolutely nothing in that definition to indicate next preceding, or immediately preceding. So we take it, Webster cannot be authority for the decision. Bear in mind, that the several statutes, cited, in which the phrase, next preceding, appears, were enacted and re-enacted from Code to Code many years before the statute under review was enacted.

Then, reflect that the statute under review was enacted in 1906, employing only the word preceding. Must we not conclude that the legislature designedly omitted the word "next" and that by so doing, the legislature intended a different meaning between the phrase and word.

But to return to an analysis of the other cases cited by this learned court to sustain the decision in the Braxton case, so that we can show them to be of no applicability and we say this with the greatest respect for this court.

We will discuss them *seriatim.* First: Reference is made to 13 Cyc. p. 1157. We say that while it defines "preceding" as next before, yet it refers as its authority to note 48 on said page 1157, and that note is the case of *Simpson* v. *Roberts,* 35 Ga. 180, which decision was predicated upon the statute of Georgia, cited, *supra,* construing, by the legislature itself, the meaning of the word "preceding," and again under said note is cited statutes of some of the states to which we have heretofore referred, defining the meaning of the word "preceding" the legislatures in said cases declared their intention of the meaning of the word "preceding."

We submit, therefore, under the facts, that the citation to Cyc., in the Braxton case is not pertinent and not even pursuasive authority. This court, in said opinion also referred to 22 Am. and Eng. Ency. Law (2 Ed.), p 1171, and quoted therefrom as follows: "Although the word "preceding," generally means next before, yet different signification will be given to it, if required by the context and

the facts of the case." This text refers to Note 3 on said page and we find the same case of *Simpson* v. *Roberts*, 35 Ga., as a bottom for the text.

We have shown that, that case, in view of the statute of Georgia, and in view of our several statutes, wherein the phrase "next preceding," is used in some, and the word "next," is omitted in others, cannot be taken as authority to support the Braxton decision. Why will not different signification be given the word "preceding" and the phrase "next preceding," in view of the said statutes. The next reference by this court is to *McMahon* v. *Building Ass'n*, 75 Miss. 965, wherein the court said: "If the word "preceding," as here used, means "next before," as we think it does, it follows that the case of *McMahon* v. *Building Ass'n*, is authority for the affirmance of this case.

We humbly and respectfully submit that such a conclusion is a *non sequitur*.

The *Lake Case*, 116 Miss. 175, did not involve the construction of the word "preceding," as meaning "next preceding," but it involved the construction of section 1697, of the Code of 1906. In the quotation, "It will be noted that more than one week did not elapse between the date of the last publication and the day of sale," was not necessary to a decision of the question involved in the Lake Case, and is therefore, *obiter dictum*, and should not be used as a bottom for the opinion in the Braxton case. *Weston* v. *Hancock County*, 98 Miss., was rendered under a statute which required the publication to be made next preceding.

Yet, upon an analysis of this decision, it will be found that even in such a case, the court held that if more than one week elapsed between the last publication and the meeting of the board, the publication conformed to the law. The case of *Lay* v. *Shores*, 112 Miss. 140, is in direct conflict with the Weston case on this point but it is not referred to. If this court in effect, overruled the Weston case, why will you not overrule the Braxton case?

This court referred to 13 Cyc., page 1157, as authority for the opinion in the Braxton case, but Cyc. refers also, to support the text, to the case of *Wilkinson* v. *State,* 10 Ind. 372 and 373, decided in 1858 under the statute cited *supra,* wherein the word preceding is stated to mean next preceding. So, you will readily see that Cyc is no authority for such a definition except in cases predicated upon the statute itself, wherein this word is so defined. *Enochs* v. *Miller,* 60 Miss. 19, is not pertinent because the deed in trust provided for thirty days' notice when only twenty-six days' notice was given, say, from April 2nd to April 28, of the same month. *Lex ita scripta est.*

(B) *Allen* v. *Alliance Trust Co.,* 84 Miss. 319, is not pertinent because the attorney in fact of the beneficiary appointed a substitute trustee, when under the terms of the trust, only the beneficiary or any holder of the notes or the legal representatives were empowered to appoint. Again *Lex ita scripta est.*

(C) *McCaughan* v. *Young,* 85 Miss. 277, is not pertinent as it announces a proposition of law that no one disputes in this, that if a trustee fails in any material particular, in making a sale under a deed of trust, to follow the terms of sale in the deed, then same will be invalid.

(D) Perry on Trust and Trustee (6 Ed.), 602, is not pertinent for the reason stated *supra.*

Now, section 2772, Code 1906, Hemingway's Code, section 2276, plainly and unambiguously provides that the notices shall be published for three consecutive weeks, preceding the sale. "This statute is mandatory that the publication must be for three consecutive weeks, but not that the publication shall be made next preceding."

But, happily for our contention, we are fully sustained by this learned court in the case of *Lay* v. *Shores,* reported in 112 Miss., pages 140 ad 141.

To attempt to construe the plain language of the legislature, three weeks preceding, into three weeks "next preceding," in view of our fourteen other statutes cited, may be likened unto the artist, who vainly attempted to

"refine pure gold, gild the lily and paint the rose." In *Jackson* v. *Jackson,* 105 Miss. 875, this court, COOK, P. J., said that the plain and unambiguous language of the legislature cannot be ignored. That it is best to leave the matter to the legislature and for the courts to follow the paths marked out by the legislature, however unimportant the details may appear.

Speaking of the language employed by the legislature, this court in *Lake* v. *Perry,* 95 Miss. 566, said: "There is but one thing for the court to do in cases of this sort, and that is to follow strictly the plainly marked out directions of the law." As said by Judge PEYTON in *Koch* v. *Bridges,* 45 Miss. 258: "There is no more propriety in dispensing with one positive requirement than another. A whole statute may be thus dispensed with when in the way of the caprice or will of a judge—it is dangerous to attempt to be wiser than the law, and when its requirements are plain and positive the courts are not called upon to give reasons why it was enacted. See, also, *Gibson* v. *Currier,* 83 Miss. 254, 35 So. 315, 102 Am. St. Rep. 442; *Ames* v. *Williams,* 72 Miss. 775, 17 So. 762; *Gusdorfer* v. *Gunby,* 72 Miss. 312, 16 So. 432; *Johns* v. *Harper,* 61 Miss. 142.

It is held in 26 Am. and Eng. Ency. Law (1 Ed.), on page 919, that: "It is not necessary that the sale be advertised to take place on a day immediately following the expiration of the required period of publication. Publication for a greater length of time than required or publication expiring some little time before the day of sale, cannot prejudice any right of the parties interested. Conversely under a statute requiring at least thirty days' notice, it is not necessary that the last publication shall be at least thirty days before the sale."

This text is supported by *Howard* v. *Hatch,* 29 Barb. (N. Y.) 297; *Taylor* v. *Reid,* 103 Ill. 349.

In *Tooke* v. *Newman,* 75 Ill. 215, it was held that: "Where the last day of publication was required to be ten days before the sale; that while the last notice could not

be less, it might lawfully be more than ten days before the sale, subject only to the qualifications that the interval must not be unreasonable." *Gvenen* v. *Schroeder,* 18 Minn. 66 (Gil. 51).

Object of notice for sale is only to inform the public of the nature and condition of the property to be sold and of the time, place, and terms of sale. Notices are given for the purpose of securing bidders and preventing sacrifice of property. If these objects are obtained, immaterial errors and mistakes will not affect the sufficiency of the notice. 19 R. C. L., pages 571 and 598.

We said it will be practically impossible to comply with the terms of the Braxton decision unless four publications are made, being one more than the legislature required. Now let us demonstrate. By section 1907, Code 1906, Hemingway's Code, section 1374, it is provided:

Rules—When a number of weeks is prescribed when publication shall be required to be made in some newspaper for three weeks, it shall be sufficient to publish once each week for three weeks, even though there be not three weeks between the first and last publication, but there must be three weeks between the first publication and the day for the appearance of the party or other thing for which the publication shall be made; and this rule shall furnish a guide for any similar case, whether the time required be more or less than three weeks. By section 2772, Code 1906, Hemingway's Code, section 2276, it is provided, *inter alia,* that sale of said land shall be advertised for three consecutive weeks, preceding such sale.

By section 1606, Code 1906, Hemingway's Code, section 1373, it is provided that: "How time computed when a number of days is prescribed, when process shall be required to be served or notice given any number of days, the day of serving the process or of giving the notice shall be excluded and the day of appearance included and in all other cases when any number of days shall be prescribed, one day shall be excluded and the other included.

When the last day falls on Sunday it shall be excluded;
but in other cases Sunday shall be reckoned in the com-
putation of time."

Now suppose we have only a weekly paper published
every Friday morning at seven o'clock.  A notice is pub-
lished on Friday, May 7th and 14th and 21, 1920, for a
sale at eleven o'clock a. m. on May 28, 1920.  By apply-
ing the above rule, exactly twenty-one days would elapse
between the first publication and the day of sale.  But
four publications would have been made in order that
no publication elapsed before the sale; however, suppose
the weekly paper is published at five o'clock p. m. on each
Friday.  Then a notice is published on Friday, May 7th,
and 14th, and 21, 1920, for a sale at eleven o'clock a. m.
on May 28, 1920.

By applying the above rule, exactly twenty-one days
would elapse between the first publication and the day
of sale and only three publications would have been made
and thus the terms of the Braxton decision could possibly
but impracticably be complied with.

This is the limit, now in which said decision can be
complied with and in no other way, without four publica-
tions.  Is it a reasonable or sensible construction grant-
ing for the sake of the argument that a plain and un-
ambiguous statute can be construed by the court other
than in the language of the legislature, to say that the
legislature intended to say that every sale of land must
be made exactly within this narrow and close limit.

Sale unreasonably remote.   In *Winbigler v. Sherman,*
decided by the supreme court of California, on June 4,
1917, it was held that where the last publication of the
notices on January 22, and the sale on February 6th the
period intervening was not unreasonably remote. See *Win-
bigler* v. *Sherman,* 165 Pac. 943.

The requirements of the deed in this case was for a pub-
lication for four successive weeks and is cited to show that
fifteen days was not an unreasonable period in that case.
There is no charge in the bill that the day of sale was not

known to complainants and no charge that the property was sold for less than its value.

Utility rules of construction. Legislative use of "next preceding" in four statutes and of "preceding" only in one statute. Ordinarily the legislature speaks only in general terms and for that reason it often becomes the duty of the court to construe and interpret a statute in a particular case for the purpose of arriving at a legislative intent and of determining whether a particular act done or omitted falls within the intended inhibition or commandment of the statute. Knowledge of the settled maxims and principles of statutory interpretation is imputed to the legislature.

To the end that there may be certainty and uniformity in legal administration, it must be assumed that statutes are enacted with a view to their interpretation according to such maxims and principles. When they are regarded, the legislative intent is ascertained. When they are ignored, interpretation becomes legislation in disguise.

It is to be presumed that the law-making body is conversant with the established rules of statutory construction, and that it knows and contemplates the legal effect that accompany the language that is employed to make effective the legislative will. 25 R. C. L., p. 956, section 211, and cases cited in the notes.

What Statutes are Subject to Construction? A statute is not to be read as if open to construction as a matter of course. It is only in the case of ambiguous statutes of uncertain meaning that the rules of construction can have any application. Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself. *Ex pressum facti cessare tactium,* a thing expressed puts an end to implication. 25 R. C. L., pages 957 and 958, section 213, and the very numerous authorities cited in the notes.

How can the statute under review be of uncertain meaning when read in connection with the sister statutes providing for publication? If these sister statutes, wherein the words "next preceding" are used, had been called to the attention of the court, the decision of the Braxton case would never have been made. We respectfully urge that it now be overruled.

Even Law of the Case Overruled. This court through ETHRIDGE, J., no longer ago than March, 1917, in *Brewer* v. *Browning,* 115 Miss. 358, went so far as to overrule the law of the case. This court said that it had the power, and would and did exercise the power, to overrule or change its decision whenever they found the opinion erroneous or wrongful, and such change of decision did not violate the rule of *res adjudicata.* A *fortiori,* should the Braxton case be overruled under the facts of the case at bar and under the statutes of this state.

Language of Statute. The intention and meaning of the legislature must primarily be determined from the language of the statute itself. No motive, purpose or intent can be imputed to the legislature in the enactment of a law other than such as are apparent upon the face and to be gathered from the terms of the law itself. 25 R. C. L., pages 961, and 962, section 217, and cases cited in the notes. *Expressio unius, est exclusio alterius.*

It is a general principle of interpretation that the mention of one thing implies the exclusion of another thing. 25 R. C. L., page 981, section 229, and cases cited in notes. Applying this maxim, is not the court in the consideration of the various statutes, cited *supra,* forced to the irresistible conclusion that the word "next" was purposely and designedly omitted by the legislature from the statute under review. 25 R. C. L., pages 994, and 995, section 238.

Several Parts to be Given Effect. The maxim *"Ut res magis valeat, quam pereat,"* requires not merely that a statute shall be given effect as a whole, but that effect should be given to each of its express provisions. 25 R. C. L., page 1004, section 246. All parts to be construed

together and harmonized. 25 R. C. L., page 1006, section 247. Division of the statutes into sections or titles, does not vary the rule that all must be construed together. 25 R. C. L., page 1009, section 248.

Revised or Compiled Laws. The rule that all parts of a law are to be construed together is peculiarly applicable to compilations and revisions, in which, for the convenience of analysis and classification of subject, provisions are sometimes widely separated, which have so immediate a connection with each other that it is quite necessary to consider the one in order to arrive at the true exposition, of the other. 25 R. C. L., page, 1009, section 249.

Statutes *"In pari materia."* For the purpose of learning the intention of the legislation, and giving effect to it, all statutes relating to the same subject (for instance, we say publications of notices) are to be compared. 25 R. C. L., page 1060, section 285. Construction with reference to other laws. No single statute should be interpreted solely by its own words. 25 R. C. L., page 1052, section 277.

Jeopardy of Titles, Endless Litigation, Destruction of Values, Disturbances of Business. *State* v. *Henry,* 87 Miss. 125; *State* v. *Mutual Life Insurance Co.,* 175 Ind. *State* v. *Sopher* (1901), 157 Ind. 360; *Hord* v. *State, supra,* and authorities, cited; *United States* v. *Graham* (1884), 110 U. S. 3, *supra,* 582 L. Ed. 126; *Tower* v. *Commonwealth,* 223 Me. 375; *New Orleans* v. *Hemphill,* 35 Miss. 117; *Learned* v. *Corley* 43 Miss. 687; *Smith* v. *Halacre,* 6 How. 582; *Byran* v. *Williams,* 7 How. 14; *Lusby* v. *Cobb,* 80 Miss. 725; *Johnson* v. *Delaney,* 77 Miss. 27; *Bacon* v. *Nichols,* 47 Colo. 51; *Yerger* v. *State,* 91 Miss. 802; *State* v. *Taylor,* 66 So. 521; *Kotch* v. *Bridge,* 45 Miss. 258; *Green* v. *Weller,* 32 Miss. 695; *Hawkins* v. *Carroll Co.,* 50 Miss. 759; *Ellison* v. *Mobile R. Co.,* 36 Miss. 572; *Ridley* v. *Ridley,* 24 Miss. 648; *Gibbons* v. *Brittums,* 56 Miss. 232; *McIntyre* v. *Ingraham,* 35 Miss. 25; *Martion* v. *O'Brien,* 34 Miss. 21. The entire statute must be so construed that the whole may have a harmonious and consistent opera-

tion. *Adams* v. *Yazoo R. R. Co.,* 75 Miss. 275, and so on
*ad infinitum.*

We will now pile Pelion on Ossa, to demonstrate that
this court has decided the case at bar in favor of our con-
tentions. *Boyd et al.* v. *Applewhite,* decided by this court
on March 22, 1920. *In Re Harper,* 133 Federal, 1970; *Mil-
ler, Auditor,* v. *Walley; Cudahy Packing Co.* v. *Stovall,*
112 Miss. 106, decided in 1916; *Kemp* v. *Hazelhurst,* 80
Miss. 445.

As said by this court in 1900, in *Clarksdale* v. *Broadus,*
77 Miss. 667: The publication for three weeks was a *sine
qua non* to the valid issuance of the bonds.

Therefore in order to adjudicate in the Kemp case that
the bonds were valid and legally issued, this court was
compelled to decide that the failure to publish on August
29, 1901, and the interval of twelve days between the last
publication and the day of the order, were not harmful
and did not affect the legality of the bonds and, thus it
appears that the decision in the Kemp case on the suffi-
ciency of the notice, is not *obiter dictum.*

Our argument is not met by saying that the case at bar
involves the construction of publications for the sale of
lands, while the Kemp case involves the construction of
publications for the issuance of bonds. Because the grava-
men, in both cases is the sufficiency of the publications in
both cases, and it is immaterial for what purpose the pub-
lications were to be made in either case.

Rule of Property. This doctrine is decisive of the case
at bar in favor of appellants. If the *Lake case,* 116 Miss.
175, has any bearing upon the case at bar, that was de-
cided at the October term, 1917, six months after the sale
at bar was made. So the rights of appellants had become
vested under the decision of the Kemp case, before either
the Lake case or the Braxton case were decided.

The meaning of the foregoing argument is not provided
by us, but by this court. *Lumber Company* v. *State,* 97
Miss.; *Hall* v. *Wells,* 54 Miss. 289, (op. 310); *Rowan*
v. *Runnels,* 4 How. 134, 12 L. Ed. 85; *Ohio Life Ins. &*

*Trust Co.* v. *Debolt,* 16 How. 416, 14 L. Ed. 997; *Muhlker* v. *N. Y. & H. R. Co.,* 197 U. S. 544, 25 Supt. Ct. 522, 49 L. Ed. 872.

The rule of property doctrine therefore throws such a shield of protection around appellants that this court under said state and federal constitutions, cannot remove, and as to the effect of the Braxton decision upon the rights of appellants under the facts of this case, it is as powerless and inoperative as Hector dead.

Again in 1916, *Robertson* v. *Puffer Manufacturing Co.,* 112 Miss., near middle of page 894, this court through Judge Cook said: "Mind you, when the parties entered into this contract they intended it to be construed as a lease because they were actually advised by the highest authority of this state that the contract was a lease."

Paraphrase: Appellants were actually advised by the highest authority in this state, in the Kemp case, that even under a statute employing the phrase next preceding, which admittedly is narrower in meaning than the word preceding, that one publication could intervene and twelve days could elapse, so under the guidance and construction by this very court, the appellants acted in the case at bar and acquired vested rights under such construction, and the rule of property doctrine protects them in such rights whether the Braxton case was rightly or wrongly decided on its facts. *McKensie* v. *Boykin,* 111 Miss. 256, decided in 1916. We have examined the statutes of all these states of this union and find that twenty-seven states do not define the meaning of the word "preceding" or the phrase "next preceding."

But the other twenty-one states by statutes, namely, Alabama, Georgia, Connecticut, Kentucky, Michigan, Minnesota and Vermont, the fourteen heretofore cited, do define the word preceding, as meaning next preceding unless the context shows a different signification. See Alabama, section 1, subsec. 5, Code 1907; Georgia, see *ante* for reference; Connecticut, Title one, chapter one, of the general statutes of Connecticut, under heading, "Construc-

tion of Statute, Words and Phrases;" Kentucky, Statutes, section 462; Michigan, section 64, subsec. 13, of the Compiled Laws of 1915; Minnesota, section 9412, Sub-Division 13, General Statutes of Minn., 1913; Vermont, Statutes chapter 1, section 19, and also the statutes of Texas, New Hampshire, Indiana, Maine, Wyoming, North Carolina, Wisconsin, West Virginia, Rhode Island, Massachusetts, Missouri, Virginia and New York, all of which have been cited *ante.*

In other words, twenty-seven state legislatures, by refusing to qualify the general, common and ordinary meaning and acceptation of the word "preceding," left it as a term of broader meaning than "next preceding," and with a difference in the meaning of the word and phrase, while twenty-one states destroy the difference in the meaning and make them synonymous. The legislatures of these twenty-one states evidently thought that without such statutes their common and ordinary meanings were different.

We respectfully submit that the decree of the lower court should be reversed, the Braxton case overruled, and a decree entered here for the appellant.

*E. B. Harrell,* for appellee.

Appellants contend that the sale by the trustee is valid because section 2772 does not require the advertisement to be made for three weeks next preceding the day of sale, and that it will not bear the construction given it by the rule announced in the Braxton case, because the word next is omitted.

In support of this contention, they cite quite a number of sections in the Code of 1906 where the word next is employed. Most of these sections, to-wit, 3090, 3092, 3097, 3098, 3099, 3100, 3102, 3103, 3104 and 3112, relate to limitations of actions and cannot possible have any application or connection with section 2772.

Sections 333 and 3419 control the notice of sale of bonds and use the word "publish" instead of "advertise" as is

employed in section 2772.  For instance, sections 333 and
3419, Code 1906, reads as follows: "Before providing for
the issuance of any bonds, the board shall publish notice
of the proposal, etc.  .  .  .  for three weeks next pre-
ceding, etc., Section 2772 provides: —————— Sale of land
shall be advertised for three consecutive weeks preceding
such sale, etc.  No sale of lands under a deed of trust or
mortgage shall be valid unless such sale shall have been
advertised as herein provided, regardless of any contract
to the contrary."  The court will take notice that no other
sections concerning sales have this concluding clause.

Section 2991, Code 1906, provides: "Sale of lands may
be made on the first Monday of every month, and shall be
advertised in a newspaper, etc.

Section 3685, Code 1906, provides: "Sales of personal
property may be made on any day except Sunday, and
shall be advertised for ten days, etc."  Thus we see that in
all cases of bond issues, the word "publication" is used
and in all cases where property is to be sold, the word "ad-
vertise" is used.

When the legislature said advertise for three consecu-
tive periods, fixing one week as a period or unit of time
they meant that the attention of the public should be con-
tinuously attracted to the thing advertised until the very
day of sale.

We agree with counsel for appellant that: "The entire
statute must be so construed that the whole may have a
harmonious and consistent operation.  The three words
advertise, consecutive and preceding are the deciding fac-
tors in section 2772, and must be so construed that each
will harmonize with the other and be consistent in their
operation.  In order to harmonize the meaning of the three
words, there can be no intermission of the designated
period or unit of time between the advertising and the day
of sale."

Does the legislature differentiate between the word
"preceding" and words "next preceding."

Appellants repeat with great emphasis, that the legis-
lature expressly used the words "next preceding" in four-
teen statutes and advisedly omitted the word "next" in
section 2772, and by so doing they differentiated between
the meaning of the simple word "preceding" and the phrase
"next preceding." "We cannot agree with counsel on this
point." Section 260, Code 1906, Poll Tax Credited to
State. He shall report to the county superintendent of
education and the auditor of public accounts the amount
of such credit during the preceding six months.

Section 383. Petition to be Filed Thirty Days. The peti-
tion provided for in the preceding section shall be filed.
Section 371 of the same chapter also provides for filing
petitions. Can it be said that section 371 is referred to
rather than section 382 because the word "next" is omit-
ted? Sections 402 and 846, Code 1906, use the word "pre-
ceding" and not "next preceding." Section 951, Code 1906,
state cases dismissed.

The clerk of any court may move the court to dismiss
any cause pending thereon in which no steps have been
taken for the two terms preceding. Will appellants con-
tend that the legislature meant two terms distantly pre-
ceding and not next preceding.

Section 2219, Code 1906, Fees of State officers. The
payment shall be accompanied by the affidavit of the of-
ficer averring that he has collected all fees allowed by
law for all work performed by him during the preceding
month, etc. Would appellants construe this to mean for
all work performed, three, six or ten months anterior to
vote, etc.

A person shall not be entitled to vote at any election who
has not been duly registered four months before offering
to vote and who has not paid all taxes for the two preced-
ing years.

Many and many a time, when a voter's right has been
challenged on this ground have we heard counsel for ap-
pellant, in giving his opinion as to the voter's qualifica-
tion, construe this section to mean next preceding. Will

he now contend that the legislature advisedly omitted the word "next" from this statute?

Preceding and Next Preceding Used in the Constitution. Through the kindness of one of appellants *amicus curiæ* lawyers, this court's attention has been called to sections 40 (error), 117-113-171 and 260 of our state constitution, which use the phrase immediately preceding and next preceding. And to make sure that these sections are not overlooked, appellants say: "It is to be presumed that those able writers of the organic law, carefully weighed the meaning of the phrase "next preceding" and the single words "preceding" and "before," and therefore Judge Stevens erred, when he said in the Braxton case, that "preceding" and "next preceding" were synonyms under the law of Mississippi."

When criticizing judicial act, we usually refer to the court as a whole, but I suppose, that in this instance Justice Stevens' absence from the bench permits the personal reverence. But back to the constitution: Section 241 of that same constitution, drafted by those same able writers of the organic law, does not use the phrase "next preceding," the single word "next" is omitted.

Section 241 of the constitution of Mississippi. "Every male inhabitant of the state, who has paid on or before the first day of February of the year in which he shall offer to vote, all taxes which may have been legally required of him, and which he has had an opportunity of paying, according to law for the two preceding years.

Will counsel for appellant, or any of his informants, even the one who claims to be the father of the franchise, or primary election law, contend that this section means any two years prior to the day of casting the ballot.

Will they say that the single word next was advisedly omitted by the legislature from this section. Do they still contend that those able writers of that organic law carefully weighed the meaning of the phrase "next preceding," and then differentiated between it and the single word "next."

This section is of vital importance to every white person in the South. It has been upheld by the courts of highest authority of these United States. *William* v. *Mississippi,* 170 U. S. 213. Its principles are high and noble. Its armament is superior to a million guns. If the word "preceding" in one section of the code does not mean "next preceding," then the same construction must be placed upon this word "preceding," in all other sections, where it is used in the same sense.

So it naturally follows, that if "preceding" does not mean "next preceding" in section 2772 of the Code of 1906, then it does not mean "next preceding" in section 241 of the constitution, and section 4118 of the Code 1906, both of these sections being the foundation of state franchise.

To overrule the doctrine announced in the Braxton case, to-wit; that "preceding" and "next preceding" are synonyms under the law of Mississippi, would mean that an elector would not be required to pay all taxes which may have been legally required of him, and which he has had an opportunity of paying according to law, for the two (next) preceding years.

The legislature of 1920, when re-drafting this section to be submitted to the qualified electors of the state for ratification or rejection (section 241 of the constitution) used the same verbiage, except to leave out the word male in one place and supply the word female in another. See Acts of 1920, chapter 150, page 207.

The word "preceding" has been construed by this court to mean "next preceding." *Roane* v. *Tunstall,* 75 Miss. 94; *Ferguson* v. *Brown,* 75 Miss. 214. To hold that the word "preceding" as used in section 2772 of the Code of 1906, does not mean "next preceding," would mean that the word "preceding," as used in section 214, Constitution does not mean "next preceding" and thus provided a leverage which might destroy the foundation of all organic law.

The legislature of 1920, used the word "preceding," when expressing what should be done in order of time, or closely following. Chapters 172 and 195, Acts of 1920.

124 Miss.—49.

An Act to Authorize Municipal Corporations to Issue
Bonds. Chapter 206, Senate Bill 220, sec. 2. Before issu-
ing said bonds, the mayor and board of aldermen, or com-
missioners, shall, by resolutions, spread upon their min-
utes, declare their intention of issuing said bonds and
shall fix in such resolution a date upon which an election
shall be held in said municipality, of which not less than
three week's notice shall be given by a notice published in
said municipality once a week for three weeks preceding
the same. The word next is omitted. Chapter 207, Acts
of 1920, Senate Bill No. 200, when referring to county and
district bonds use the same language, to-wit: By publi-
cation of a notice thereof in a newspaper published in the
county once a week for three weeks preceding the same.
Almost the same language as is used in section 2772.

When drafting the last named section the legislature of
1920, dropped the word next, as formerly employed in sec-
tions 333 and 3419 by the legislature of 1906.

No doubt this was due to the fact that this court had at
the March term, 1919, plainly interpreted the legislative
intent and meaning of the single word "preceding."

At any rate, it goes to show that neither the word "pre-
ceding" or phrase "next preceding" were used "advisely"
by the lawmakers, in the different sections mentioned. So
we see that the word "next" as used by the lawmakers,
merely indicates, with useless fullness of expression, the
time essential to the particular thing referred to. It is a
pleonasm, a redundant and needless expression, one which
might be left out of either of the sections, without alter-
ing the sense and effect of same.

No evil can come from this view while the contention of
appellants would destroy the intent and purpose of sec-
tion 2772, and leave unsettled the mode of advertising
lands. The result would be, that the title to every piece
of land hereafter sold by a trustee would be open to litiga-
tion, and the courts would be called on in each instance
to determine the question of reasonable time for the notice
of sale especially so, when one hundred lawyers (accord-

ing to the statement of our friend Powell) have placed themselves on record as opposing the rule announced in the Braxton case, and none of them agreeing upon a reasonable period between the last publication and day of sale.

If the Braxton case is overruled, is it not reasonable to say that every trustee (who are usually lawyers) would fix this period to suit himself and, allow thirty, sixty, ninety or even one hundred days to elapse after the last issue of the publication.

Construction of Braxton Case. We take it that this court, in arriving at the conclusion reached in the Braxton case, reasoned that it was not so much a question of a reasonable time for the sale after the advertising period, as it was a question of reasonable interpretation of the statute, resulting in the definite fixing of a period of the sale commensurate with the period fixed for the advertising.

Advertise and Publish. And the court evidently noted the distinction between the sections relating to bond issues and those referring to land sales. All sections relating to bond issues use the word "publish," while those referring to land sales use the word "advertise." The common acceptance of the word "publication," merely means an announcement. As in the issuance of bonds, the officials merely announce their intention to issue, and none of these sections carry that mandatory clause which says: "No sales of land under a deed of trust or mortgage shall be valid unless such sale shall have been advertised as herein provided for." By this clause the legislature meant that section 2772 must be complied with to the letter.

When the legislature said advertise for three consecutive periods, fixing one week as a period, they meant that the attention of the public should be constantly directed to the thing advertised until the very day of sale. Custom or common practice, marks a distinction between the two words (publication and advertise) and seems to have commercialized the word advertise.

If a dealer wishes to push the sale of his commodities, he does not merely make publication in some newspaper, he advertises until the day of sale. Who ever heard of a concern advertising its wares for a period exceeding the day of sale and then discontinuing the advertisement ten days before the time fixed?

If we should request some one to make publication of a certain thing, we would only expect them to publish the request in some paper for the number of times designated. But if we should request that party to advertise a coming event, to take place on a certain day, we would certainly expect that advertisement to run until the day fixed. No man with ordinary reason would discontinue the advertisement for ten days, or any other period before the day of action.

We agree with counsel for appellant that: "The entire statute must be so construed that the whole may have a harmonious and consistent operation."

The three words, advertise, consecutive, and preceding, are the deciding factors in section 2772, and must be so construed that each will harmonize with the other, and be consistent in their operation. In order to harmonize the meaning of these three words there can be no intermission of the designated period between the advertisement and the day of sale.

"In determining the proper construction of a statute, the entire legislation on the same subject-matter, its policy, and reason, as well as the text of the particular act, must be looked to." *Clement* v. *Anderson,* 46 Miss. 598.

Reasonable time. Appellants admit, however, that there must be a reasonable time between the discontinuing of the advertisement and day of sale. He is not satisfied with the time as fixed by the court and gives no intimation as to a definite period. Then pray tell us who shall fix this reasonable time? Will the trustee in each sale be allowed to fix his own time? This reasonable time has been justly and definitely fixed, let it remain fixed—

and forever put at rest any doubt as to what notice shall be given of land sales by trustees.

If the former evils of advertising lands for sale under trust deeds are to be remedied, and the intention of the legislature on this line is to be carried out, we cannot conceive of any other construction of section 2772, than has been placed upon it by the rule announced in the Braxton case; and this doctrine should not be overruled, distinguished or modified.

ETHRIDGE, J., delivered the opinion of the court.

(After stating the facts as above.)   It will be seen from what we have stated that the principal thing considered on the motion dissolved is the validity of the trustees' sales above referred to, and this appeal is principally for the purpose of seeing if this court will overrule a decision rendered by it in the case of the *Planters' Mercantile Co.* v. *Braxton,* 120 Miss. 470, 82 So. 323.   On this appeal a vigorous assault is made on the *Braxton Case, supra,* not only by the attorney for the appellants, but by several attorneys as *amicus curiae,* and there are also briefs *amicus curiae* to sustain the decision above referred to.

We have laboriously and painstakingly studied the briefs and authorities, and have reconsidered the whole subject, and have reached the conclusion that the *Braxton Case, supra,* should not be overruled.   It is, to say the least of it, a reasonable interpretation of the language used, and where there are two reasonable interpretations deducible from the language of a statute, and the court has already adopted one of them, the decision should stand.   There ought to be stability in court decisions.

The statute under review in the present case and in the *Braxton Case, supra,* is section 2772, Code of 1906 Hemingway's Code, section 2276), and it reads as follows:

"All lands comprising a single tract, and wholly de-scribed by the subdivisions of the governmental surveys, sold under mortgages and deeds of trust hereafter exe-

cuted, shall be sold in the manner provided by section one hundred and eleven of the constitution for the sale of lands in pursuance of a decree of court, or under execution.  All lands sold at public outcry under deeds of trust hereafter executed, or other contracts hereafter made, shall be sold in the county in which the land is located, or in the county of the residence of the grantor, or one of the grantors in the trust deed, provided that where the land is situated in two or more counties the parties may contract for a sale of the whole in any of the counties in which any part of the land lies.  Sale of said lands shall be advertised for three consecutive weeks preceding such sale, in a newspaper  .  .  .  in the county, or, if none is so published, in some paper having a general circulation therein, and by posting one notice at the court house of the county where the land is situated, for said time.  .  .  .  No sale of lands under a deed of trust or mortgage shall be valid unless such sale shall have been advertised as herein provided for, regardless of any contract to the contrary.  An error in the mode of sale such as makes the sale void will not be cured by any statute of limitations, except as to the ten years' statute of adverse possession."

It is admitted in the argument here that the advertisement must be within a reasonable time before the sale, the appellants contending that the language of this section does not mean what we said it meant in the *Braxton Case, supra,* but that any time within a reasonable time preceding a sale is a sufficient compliance with the statute, and the opinions entertaining that view, as appear from the briefs, vary in their views as to the latitude that the court can allow, varying from one week to three months. One brief, *amicus curiae* for the appellant suggests that the statute be so construed as to provide that three weeks before the week of the sale, instead of three weeks before the day of the sale.

In construing statutes this court has no desire to reach any conclusion except one in harmony with the legislative

intent, and its efforts are directed to ascertaining the legislative intent, and if the legislature acts within constitutional limits, we will give effect according to their term and intendment, ascertained according to recognized rules of statutory construction. We think the opinion by Justive Stevens in the *Braxton Case, supra,* reviews the authorities in so far as they deal with the word "preceding," but counsel for appellees in his brief calls attention to the latest authoritative work in the lexicon field, to wit, the Oxford Dictionary of the English Language, which accords with the views we expressed in the *Braxton Case, supra.*

Much has been said about hardships and the destruction of titles, and similar things. We think there is no hardship involved, because it is an easy matter to make a sale on the day following the last day of the publication, but if, for any reason, it was not desirable to sell on such day as immediately follows the last day of a three weeks' publication, the notice could be run for an additional time in the newspaper, which would enable the trustee to select a day which might be desirable by the simple expedient of running the advertisement in one or more issues of the paper, and the legality of this course was distinctly and specifically upheld in the case of *Lake* v. *Castleman,* 116 Miss. 175, 76 So. 877. We feel satisfied with the soundness of the decisions referred to, and refuse to overrule them.

It next remains to be decided whether the tax sale conferred a valid title on the appellant, or whether the redemption attempted is good or not. Very little attention is paid to this point in the briefs and arguments, but it may be the chancellor desired our views on that proposition.

Section 4338, Code of 1906 (Hemingway's Code, section 6972), reads as follows:

"The tax collector shall file all conveyances of land sold to individuals in the office of the clerk of the chancery court of the county, on or before the first Monday of May,

there to remain for two years from the day of sale, unless the land be sooner redeemed; and the owner of the land or any person for him, may redeem the same within two years by paying the clerk, regardless of the amount of the purchaser's bid at the tax sale, the whole amount of tax for which the land was sold, with all costs and charges consequent upon the sale, and twenty-five per centum damages upon the amount of tax, and all costs, and also all state and county taxes that have accrued on the land since the sale, and also five per centum on the whole amount of the redemption money; to infants and persons of unsound mind whose lands may be sold for taxes, the right to redeem the same within two years after attaining full age or sanity, from any purchaser thereof, on the terms herein prescribed, and on their paying the value of any permanent improvements on the land made after the expiration of two years from the date of the sale of the lands for taxes."

We think that when the parties went to the chancery clerk and paid the amount which the clerk stated was necessary, and when the chancery clerk canceled the deed and surrendered it to them, it constituted a valid redemption, although the clerk did not collect the taxes accruing subsequent to the sale for taxes. The appellants will have the right to collect these taxes from the appellees in an accounting, and make them a charge, if necessary, on the lands. The statute requires such a conveyance to remain on file for two years for the purpose of redemption, and when the chancery clerk canceled the deed and surrendered it to them the deed cannot by his mistake ripen into a valid conveyance, notwithstanding the effort to redeem. *Erwin* v. *Lee,* 118 Miss. 194, 79 So. 104.

It follows from what we have said that the judgment of the chancellor in retaining the injunction until an accounting can be had was proper. If the amounts paid and the amounts received by the appellants do not equal the amount of the indebtedness under the deeds of trust held by Maris at the time of the filing of the bill, the court may decree the sale to pay such amount as it may find to be

due the appellant Maris, not barred by the statute of limitations at the time when the injunction was sued out.

*Affirmed and remanded.*

SYKES and HOLDEN, JJ., dissent.

SMITH, C. J., being disqualified, took no part in this decision.

HOLDEN, J. (dissenting). I am thoroughly convinced the majority opinion is wrong. It upholds and relies upon the correctness of the decision in *Planters' Mercantile Co.* v. *Braxton*, 120 Miss. 470, 82 So. 323, which I think is error, and should be overruled, because it not only announces an incorrect interpretation of the statutes, but it has established an unreasonable rule which no doubt has been harmful, and will continue to be mischievous in results until the legislature meets and corrects it by legislative action.

I agree with the main opinion that "there ought to be stability in court decisions," but when I feel reasonably certain that a decision is grievously wrong and is harmful in its effects, I think it is best to overrule it and destroy the evil as soon as possible.

My reasons, in short, for dissenting are that the Braxton decision, *supra,* makes the plain error of judicially adding the words "next before" or "immediately preceding" the day of sale to the provision of the statute which requires publication to be made "for three consecutive weeks preceding such sale." I do not think the lawmakers intended that sales should take place immediately following the publication of notice. It is probable they meant that the sale should follow reasonably close to the date of the last publication and the expiration of the three weeks' notice. Certainly it cannot be well contended that the sale must take place within the next day following the expiration of the three weeks' notice, where for instance, the first notice of the sale is published on the first day of

the month, the second notice on the 8th, and the third on the 15th, that then the sale must take place on the 22d or be void. In such case the sale would have to be made on the 22d and no other day. The statute only requires three week's publication of notice, but the main opinion following the Braxton Case has judicially amended the statute so that four publications are now required in order to make the sale valid, unless the sale occurs on the 22d day after the first publication. This is an unreasonable rule, and there is good ground to believe it impossible to follow, for the reason that the statute (section 1607, Code of 1906; section 1374, Hemingway's Code) provides that it shall be sufficient to publish once each week for three weeks, even though there be not three weeks between the first and last publication, "but there must be three weeks between the first publication and the day of the sale." Now, there cannot be three full weeks, that is twenty-one days, between the first publication on the first of the month and the day of the sale on the 22d, therefore it would be impossible for three entire weeks to intervene or come between the first date of publication and the date of sale. The first and last days would be short several hours. Weekly newspapers vary as to the hours of publication, sometimes a day, or several hours before or after legal hours. At all events it may be reasonably said that it would require an acrobatic performance to carry out safely such a rule as laid down by the majority opinion.

The chief error of the majority is in construing the statute to mean "next before" or "immediately preceding" the sale. An investigation of the meaning of the word "preceding" had led me to a fairly safe and satisfactory conclusion. The authorities are mixed and confused as to its exact meaning, and seem to hold that its meaning depends upon the relation it bears to the particular matter involved, or that it is to be interpreted according to the context. But for the context here "preceding" would simply mean "before," or any three weeks "before" the

sale.  But I think the legislature meant to use it to express the idea of reasonably close "before." ·

However, I think I have a safe guide as to the meaning of "preceding" in our own state.  The lawmakers and the framers of our constitution have used the word many times in the constitution and our statutes.  Wherever the makers of the constitution use the word "preceding" they invariably qualified it, when they desired to do so, as "next preceding," "immediately preceding."  See sections 41, 117, 133, 135, 150, 171, 242, and 273 of the constitution.  When section 2772 Code of 1906, here involved, was enacted the legislature had before it the constitution and statutes of this state, and must have been informed with reference to the legal use and meaning of the word "preceding."  The lawmaking body certainly knew that the word "preceding" would not ordinarily carry the qualification of "next preceding."  Therefore, if the legislature had intended that the publication must be "next before" or "immediately preceding" the sale, they would have said so by using the restrictive words generally used for such purpose by the legislative bodies heretofore in our state.

I quite agree with the argument that the sale should not be had at an unreasonably distant date after the last publication of notice, but I disagree with the unreasonable, and perhaps impossible, rule as now laid down by this court.  A reasonable rule in most cases would probably be that the sale must take place within two weeks after the last publication of notice.  There should be, however, at least one week allowed in which the sale could be made after the expiration of the twenty-one days' notice by publication.

In one of the briefs for the appellant, able counsel, who also has had a large experience in the legislation of our state, presents a unique but very plausible theory as to the meaning of the legislature in the use of the word "preceding" in the statute in question.  In substance, it is that the legislative intent was that the sale should take place within a week following the expiration of the three

weeks' notice; that the lawmakers had in mind "weeks" and not "days," and, as I understand the contention, the requirement intends that the notice be published three weeks preceding the "week" of the sale, instead of preceding the "day" of the sale, as held in the Braxton Case. The argument advanced is logical, if not conclusively sound. However, I think it is clearly more reasonable than the construction reached in the majority opinion.

The statutes fully prescribe the valid way of foreclosing a deed of trust; and when it requires only three weeks' notice by publication, it is error for this court to hold, in effect, that four weeks' notice by publication is necessary for a valid sale. The view that the sale must be on the 22d day from the date of the first publication of notice, where there are only three publications made, is entirely too narrow, and ought to yield to the liberal and reasonable interpretation that the sale is valid when made within a reasonable time, say one week, after there has been three weeks' notice by three publications. I hope the next session of the legislature will correct the error.

SYKES, J., concurs in the above opinion.